UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION AT CLEVELAND

**Christopher Carlo**                                    Case No. 1:18-cv-00031-PAG

    Plaintiff                                           Judge Patricia A. Gaughan

vs.

**Midwest Recovery Systems, LLC**, *et al.*

    Defendant(s)

### PLAINTIFF CHRISTOPHER CARLO'S FIRST AMENDED COMPLAINT FOR DAMAGES AGAINST DEFENDANTS MIDWEST RECOVERY SERVICES, LLC AND DEFENDANT JTM CAPITAL MANAGEMENT, LLC
### (WITH JURY DEMAND)

Plaintiff Christopher Carlo ("Plaintiff" or "Carlo"), for his First Amended Complaint against the Defendants, Midwest Recovery Services, LLC ("Midwest") and JTM Capital Management, LLC ("JTM"), states as follows:

### WHY PLAINTIFF IS FILING THIS CASE

Like millions of others, Christopher Carlo aspired to achieve the American Dream of homeownership.  In December of 2017, he was under contract to purchase a home, relying upon mortgage approval to finance that purchase.  After working through the mortgage application and approval process, Carlo was expected to close on that purchase on or before December 22, 2017.  However, just prior to closing, a new tradeline appeared on his credit report, an alleged collection account reported by the Defendant, Midwest Recovery Services, LLC, allegedly on behalf of JTM Capital Management, LLC as the purchaser of an account originally held by non-party SFG Finance, LLC.  Carlo has never held any account with, nor had any obligation to, Midwest, JTM, or SFG Finance, LLC.  Carlo has never received any written notification from

JTM or from Midwest regarding this alleged collection. Carlo has demanded, in writing, that JTM and Midwest validate this debt prior to continuing any collection activities. The information that was reported by Midwest rendered Carlo's mortgage approval invalid and void. Despite the well settled case law that reporting collection information to a credit reporting agency is a collection activity, Midwest initially refused to delete the negative information it was reporting. As of the date of filing this Amended Complaint, neither Midwest nor JTM has provided any evidence to support any right to demand or collect any debt from Carlo. Carlo is left with no other option than to come to this Court seeking redress and to compel Midwest and JTM to comply with their statutory obligations.

## STATEMENT OF THE CASE

1. Carlo brings this action alleging violations of the Fair Debt Collection Practices Act, 15 U.S. C. § 1692 *et seq*., (the "FDCPA"), and the Ohio Consumer Sales Practices Act, R.C. 1345.01 *et seq.,* (the "OSCPA").

2. The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses, or abuses any debtor; and any false, deceptive, or misleading statements in connection with the collection of a debt. It also requires debt buyers and debt collectors to give consumers certain information upon initial contact with the consumer, and to take certain steps prior to resuming collection activity in the event that the consumer demands validation of the debt. 15 U.S.C. §§ 1692(d), 1692(e), 1692(f) and 1692(g).

3. In enacting the FDCPA, Congress found that: "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." *15 U.S.C. §1692(a).*

4. Because of this, courts have held that "the FDCPA's legislative intent emphasizes the need to construe the statute broadly, so that we may protect consumers against debt collectors' harassing conduct." and that "[t]his intent cannot be underestimated." *Ramirez v. Apex Financial Management LLC*, 567 F.Supp.2d 1035, 1042 (N.D.Ill. 2008).

5. Plaintiff seeks to enforce those policies and civil rights which are expressed through the FDCPA, 15 U.S.C. § 1692 *et seq*. and the Ohio Consumer Sales Practices Act, R.C. 1345, *et seq*.

## PARTIES, JURISDICTION, AND VENUE

6. Plaintiff Christopher Carlo is a natural person, residing at 8311 Rustic Drive, Chardon, OH 44024.

7. Carlo is a consumer as that term is defined by the Fair Debt Collections Practices Act (FDCPA) because he is allegedly obligated to pay a debt to JTM.

8. Defendant JTM Capital Management, LLC ("JTM") is a Delaware Corporation, and is not registered to conduct business in Ohio.

9. JTM Capital Management, LLC "specializes in delinquent account receivables management for a variety of industries including retail and financial services."[1]

10. JTM Capital Management, LLC is a debt collector as defined by the FDCPA and a supplier as defined by the OSCPA.

11. Defendant JTM's principal purpose of business is the collection of debts, and JTM regularly uses the instrumentalities of interstate commerce and/or the mails, either directly or through an Agent, in its business of debt collection.

---

[1] JTM Capital Management http://jtmcm.com/ , last visited July 10, 2018.

12. Defendant Midwest Recovery Systems, LLC ("Midwest") is a Missouri Corporation, registered with the Ohio Secretary of State as entity number 2136373, pursuant to R.C. 1703.04.

13. Midwest Recovery Systems, LLC is "a leading competitor in the Accounts Receivable Management & Telemarketing Services throughout the St. Louis Metropolitan Area."[2]

14. Midwest is a debt collector as defined by the FDCPA and a supplier as defined by the OSCPA.

15. Midwest is a debt collector. Midwest regularly uses the instrumentalities of interstate commerce and/or the mails in its business the principal purpose of which is the collection of debts, and regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

16. Jurisdiction over the claims against JTM and Midwest is conferred by 28 U.S.C. § 1331 as this action arises under the Fair Debt Collection Practices Act, 12 U.S.C. §§1692, *et seq*. ("FDCPA").

17. This Court has supplemental jurisdiction to hear all state law statutory and common law claims pursuant to 28 U.S.C. § 1367, including claims arising under the Ohio Consumer Sales Practices Act, R.C. 1345, *et seq*.

18. Defendant Midwest conducts business in the State of Ohio.

19. Defendant JTM, directly or through its agent(s), attempts to collect purchased debt and receivables in Ohio, and thereby conducts business in the State of Ohio.

---

[2] Midwest Recovery Systems http://www.mrs-direct.com/ last visited July 10, 2018.

20. Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred, or a substantial part of property that is the subject of the action, is in this District.

## FACTUAL ALLEGATIONS

21. For better than four years, Christopher Carlo has been working diligently to manage his debt and his use of credit, so that he might purchase a home for himself and his family.

22. To achieve that goal, Carlo has been acutely aware of the contents of his credit report and has been very careful to ensure that his report is accurate, and that it contains no inaccurate or negative information. Carlo has been conservative in his use of credit, and in the management and repayment of any debt that he took on.

23. Having experienced problems dealing with debt collectors in the past, Carlo was acutely aware of the need to be responsive to correspondence from debt collectors.

24. Having experienced problems with negative credit in the past, Carlo was particularly vulnerable to harm from inaccurate and negative information reported by a debt collector to one or more credit bureaus.

25. On or around August 4, 2017, Carlo began the process of obtaining mortgage pre-approval so that he could purchase a home. At that time, his credit score and overall credit profile qualified him for mortgage financing, and he was given a "pre-approval" for mortgage financing.

26. The credit report which the lender obtained and relied upon in issuing that pre-approval did not contain any tradeline from non-party SFG Finance, LLC, from Defendant JTM, or from Defendant Midwest.

27. On or around September 15, 2017, Carlo entered into a contract to purchase a property located in Portage County, Ohio. The contract ultimately required the sale to close on or before Friday, December 22, 2017. The contract stated that time was of the essence for completion.

28. Carlo worked through the mortgage underwriting process, spending approximately $2,000 for a general home inspection, appraisal, septic system inspection, and first year homeowner's insurance policy.

29. On or around December 8, 2017, as one of the final steps in the mortgage underwriting process, the lender obtained Carlo's updated credit report.

30. This credit report now contained a Collection account, reported by Midwest, as follows:

| ECOA | CREDITOR ACCOUNT NO | RPTD | LAST ACT | OPND | LIMIT OR HIGHEST CREDIT | PRESENT STATUS BALANCE OWING | PRESENT STATUS AMOUNT PAST DUE | TERMS PYMT AMT | TYPE/RATE VENDOR | HISTORICAL STATUS NO MOS HIST REV | 30 DAYS | 60 DAYS | 90 DAYS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | COLLECTION #263241903648604 (855) 232-4407 | 12/17 | | 11/17 | 9955 | 3343 UNPAID ORIGINAL CREDITOR: SFG FINANCE LLC | | | 09 EFX | 2 | | | 9X |

31. Prior to reviewing his credit report on December 8, 2017, Carlo had no knowledge of any alleged debt owed to non-party SFG Finance, LLC, to the Defendant JTM, or to the Defendant Midwest Recovery Systems, LLC.

32. Carlo has never received any written correspondence regarding this alleged debt from Midwest or JTM.

33. The debt is an alleged obligation that arose out of a transaction that was primarily for personal, family, or household use.

34. Carlo, through counsel, immediately sent a letter to Midwest, demanding that they cease any collection activity until Midwest had validated this alleged debt.

35. Specifically, the letter demanded that Midwest "Please conduct a full investigation of the validity of this alleged debt, and the information contained in each and every data field, specifically including (but not limited to), the name and address of the original creditor, the original date of delinquency with that creditor, the date of assignment of the alleged debt (or, the date you were retained to collect this debt on behalf of a third party) to you, and verification **directly from the original creditor** as necessary to validate the debt under 15 USC § 1692(g)."

36. On December 11, 2017, Carlo sent the letter to Midwest via email to support@mrs-direct.com, which is posted on Midwest's website under the "contact us" page.[3]

37. After sending the email, counsel for Mr. Carlo called Midwest directly, and was connected to a collection supervisor. The supervisor indicated that Midwest had received the email, and that Midwest was reporting the information to the credit bureaus at the direction of the current creditor, Defendant JTM Capital Management, LLC. The supervisor also stated that the information reported to the credit bureaus would not be suppressed or deleted pending validation of the alleged debt.

38. Carlo also sent that letter via certified mail, which was received by Midwest on December 27, 2017.

39. At all times relevant to this action, Midwest Recovery Systems, LLC was acting as the agent of, and at the direction of, and under the authority of, JTM Capital Management, LLC.

---

[3] Midwest Recovery Systems, Contact Us http://www.mrs-direct.com/contact.html, last visited July 10, 2018.

40. JTM Capital Management, LLC is liable for the conduct of its agent, Midwest Recovery Systems, LLC.

41. Subsequent to the filing of this action, on or around January 19, 2018, Carlo, again through counsel, received a letter from Midwest, indicating that Midwest had sent a letter to the three credit bureaus requesting deletion of the tradeline.

42. Because the tradeline was still appearing on his credit report, Carlo was forced to incur additional expenses to submit the Midwest letter of January 19, 2018 to each of the three major credit bureaus directly.  At some time in early February, 2018, the information was deleted from Carlo's file.

### COUNT ONE- VIOLATIONS OF 15 USC § 1692(g)(a)
### (failure to provide initial notice of debt)

43. The Plaintiff incorporates all allegations contained in Paragraphs 1 through 42 as if fully restated herein.

44. 15 U.S.C. § 1692(g)(a) states that:

> (a) Notice of debt; contents. Within **five days** after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

>   (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

45. Despite the clear statutory obligation to send the written notice of debt, Carlo has never received any written communication from Midwest.

46. At all times relevant to this complaint, JTM instructed and allowed Midwest to represent to Carlo that Midwest was acting as the agent of JTM, and thus JTM has vicarious liability for the actions of its agent, Midwest. *See Hoffman v. GC Servs. Ltd. P'ship.,* E.D.Tenn. No. 3:08-cv-255, 2010 U.S. Dist. LEXIS 139509, at *24 (Mar. 3, 2010), citing with approval *Newman v. Checkrite California,* 912 F.Supp. 1354, 1371 (E.D.Cal.1995) *see also Freeman v. ABC Legal Servs., Inc.,* 827 F.Supp.2d 1065, 1076 (N.D.Cal.2011).

47. JTM and Midwest's conduct as alleged in the preceding paragraphs is a violation of 15 U.S.C. § 1692(g)(a).

48. Defendants are liable to the Plaintiff for an award of actual damages, statutory damages per Defendant, and reasonable attorneys' fees and costs.

**COUNT TWO- VIOLATIONS OF 15 USC § 1692(g)(b)**
**(failure to cease collection of debt upon receipt of dispute)**

49. Plaintiff incorporates all allegations contained in Paragraphs 1 through 42 as if fully restated herein.

50. 15 U.S.C. § 1692(g)(b) states in part that:

>   Disputed debts. If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, **the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt** or a copy of a judgment, or the name and address of the original creditor, **and a copy of such verification or judgment, or name and address of the original creditor, is mailed to**

**the consumer by the debt collector.** Collection activities and communications that do not otherwise violate this title may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor.

51. Carlo notified Midwest in writing that he was disputing the debt, and Carlo demanded that Midwest validate the debt before continuing any collection activities.

52. Reporting a disputed, unverified debt to a CRA violates § 1692(g)(b) see *Edeh v. Midland Credit Mgt.*, 748 F.Supp.2d 1030, 1035-1036 (D.Minn.2010).

53. The Sixth Circuit Court of Appeals has assumed without deciding that the reporting of a debt to a credit bureau represents a collection activity. *Purnell v. Arrow Fin. Servs., LLC*, 6th Cir. No. 07-1903, 2008 U.S. App. LEXIS 25488, at *17 (Dec. 16, 2008), fn. 5.

54. In addition to the requirement of 15 U.S.C. § 1692(g)(b) and the case law cited above which requires deletion of information reported a credit bureau, nothing requires a debt collector to report information to a bureau at all. Collectors do so in order to compel an alleged debtor to make payment, because ""[T]he reality is that debt collectors use the reporting mechanism as a tool to persuade consumers to pay, just like dunning letters and telephone calls." *Moscona v. California Business Bur., Inc.*, S.D.Cal. No. 10-CV-1468 BEN (CAB), 2011 U.S. Dist. LEXIS 123177, at *10 (Oct. 24, 2011).

55. Having elected to submit negative information to the credit bureaus prior to the expiration of the 30-day window (see paragraph 36, above) in which Midwest has an obligation to cease collection activity upon receipt of a demand for validation, Midwest was required to immediately cease collection and suppress or delete the reported information upon receipt of a timely demand for validation.

56. Midwest has the ability to submit updates to reported information to the credit bureaus immediately, through an electronic system that Midwest has access to as a subscriber or furnisher of information to those credit reporting agencies.

57. Such a submission would result in the immediate deletion or suppression of the information Midwest has reported.

58. Midwest has not instructed the credit reporting agencies to delete or suppress the information that Midwest has reported.

59. Despite having received Carlo's written demand for validation, Midwest has not validated this debt, Midwest has not sent any written notice of validation to Carlo.

60. At all times relevant to this complaint, JTM instructed and allowed Midwest to represent to Carlo that Midwest was acting as the agent of JTM, and thus JTM has vicarious liability for the actions of its agent, Midwest.

61. JTM and Midwest's conduct as alleged in the preceding paragraphs is a violation of 15 § U.S.C. 1692(g)(b).

62. Defendants are liable to the Plaintiff for an award of actual damages, statutory damages per Defendant, and reasonable attorneys' fees and costs.

### COUNT THREE-VIOLATIONS OF 15 USC § 1692(e)(8)
### (false or misleading representations in an attempt to collect a debt)

63. Plaintiff incorporates all allegations contained in Paragraphs 1 through 42 as if fully restated herein.

64. 15 USC § 1692(e)(8) prohibits a debt collector from "**Communicating or threatening to communicate to any person credit information which is known or which should be known to be false…**"

65. As shown above in paragraph 17, Midwest has reported multiple data points to each of the three major credit reporting agencies.

66. Midwest has reported that the date this alleged account was opened was November of 2017.

67. This information is false, and upon information and belief, it reflects the date that this alleged debt was placed with Midwest for collection, and not the actual date the alleged account was opened with the original creditor.

68. "Recent" negative credit information such as a collection account has a greater negative impact on a consumer credit score than older, negative credit information.

69. By reporting the "date opened" as November of 2017, (the date the alleged account was placed with Midwest for collection) rather than the date that the alleged account was opened with the original creditor (or the date that the alleged account first became delinquent) Midwest is knowingly reporting false information to the credit bureaus, in a manner that produces greater harm to Carlo's credit profile. This conduct is called 're-aging" an account. *15 U.S.C.§ 1681(c)(c)(1), see also Gillespie v. Equifax Information Servs., L.L.C.*, 484 F.3d 938 (7th Cir.2007).

70. At all times relevant to this complaint, JTM instructed and allowed Midwest to represent to Carlo that Midwest was acting as the agent of JTM, and thus JTM has vicarious liability for the actions of its agent, Midwest.

71. JTM and Midwest's conduct as alleged in the preceding paragraphs is a violation of 15 U.S.C. § 1692(e)(8).

72. Defendants are liable to the Plaintiff for an award of actual damages, statutory damages per Defendant, and reasonable attorneys' fees and costs.

**COUNT FOUR-VIOLATIONS OF 15 USC § 1692(e)(2)(A)**
**(false representation of the character of the debt)**

73. Plaintiff incorporates all allegations contained in Paragraphs 1 through 42 as if fully restated herein.

74. Midwest has reported that this account is coded as type "09", which indicates that it a recurring, ongoing monthly obligation, with two months of missed payments.

75. This information is false because this alleged debt is a collection account, with a total balance due, and no recurring monthly payments due.

76. The credit scoring model places greater weight on recurring payment histories, particularly histories which reflect current or recent late payments, than the model places on one-time collection accounts.

77. By reporting this account as an "open" account rather than a collection account, Midwest reported false information to the credit bureaus, which had a negative impact upon Mr. Carlo's credit profile and credit score.

78. At all times relevant to this complaint, JTM instructed and allowed Midwest to represent to Carlo that Midwest was acting as the agent of JTM, and thus JTM has vicarious liability for the actions of its agent, Midwest.

79. JTM and Midwest's conduct as alleged in the preceding paragraphs is a violation of 15 U.S.C. § 1692(e)(2)(A).

80. Defendants are liable to the Plaintiff for an award of actual damages, statutory damages per Defendant, and reasonable attorneys' fees and costs.

## COUNT FIVE-VIOLATIONS OF 15 USC § 1692(d)-
### (attempting to collect a debt not owed)

81. Plaintiff incorporates all allegations contained in Paragraphs 1 through 42 as if fully restated herein.

82. Carlo had never owed any debt to SFG Finance, LLC, JTM, or Midwest, or, in the alternative, any debt owed is now time barred.

83. Midwest's reporting of the alleged debt to credit bureaus was effectively a demand for payment from Carlo. *See Purnell v. Arrow Fin. Servs., LLC*, 6th Cir. No. 07-1903, 2008 U.S. App. LEXIS 25488, at *17 (Dec. 16, 2008), fn. 5.

84. A demand for payment of unenforceable debt, or a demand for payment of a debt not owed, is a violation of 15 U.S.C. 1692(d). *See Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355 (6th Cir.2012).

85. At all times relevant to this complaint, JTM instructed and allowed Midwest to represent to Carlo that Midwest was acting as the agent of JTM, and thus JTM has vicarious liability for the actions of its agent, Midwest. *See Hoffman v. GC Servs. Ltd. P'ship., E.D.Tenn. No. 3:08-cv-255,* 2010 U.S. Dist. LEXIS 139509, at *24 (Mar. 3, 2010), citing with approval *Newman v. Checkrite California,* 912 F.Supp. 1354, 1371 (E.D.Cal.1995) *see also Freeman v. ABC Legal Servs., Inc.,* 827 F.Supp.2d 1065, 1076 (N.D.Cal.2011).

86. JTM and Midwest's conduct as alleged in the preceding paragraphs is a violation of 15 U.S.C. § 1692(d).

87. Defendants are liable to the Plaintiff for an award of actual damages, statutory damages per Defendant, and reasonable attorneys' fees and costs.

## COUNT FIVE-VIOLATIONS OF 15 USC § 1692(f)-
**(attempting to collect any amount not expressly authorized by the agreement creating the debt or permitted by law)**

88.	The Plaintiff incorporates all allegations contained in Paragraphs 1 through 42 as if fully restated herein.

89.	Carlo had never owed any debt to SFG Finance, LLC, JTM, or Midwest, or, in the alternative, any debt owed is now time barred.

90.	Midwest's reporting of the alleged debt to credit bureaus was effectively a demand for payment from Carlo. *See Purnell v. Arrow Fin. Servs., LLC*, 6th Cir. No. 07-1903, 2008 U.S. App. LEXIS 25488, at *17 (Dec. 16, 2008), fn. 5.

91.	Upon information and belief, JTM has no contract or agreement between Carlo and the alleged original creditor, SFG Finance, LLC, and thus reporting a balance of $3343 was an attempt to collect a debt that was not expressly authorized by the agreement creating the debt or permitted by law.

92.	At all times relevant to this complaint, JTM instructed and allowed Midwest to represent to Carlo that Midwest was acting as the agent of JTM, and thus JTM has vicarious liability for the actions of its agent, Midwest.

93.	JTM and Midwest's conduct as alleged in the preceding paragraphs is a violation of 15 U.S.C. § 1692(f).

94.	Defendants are liable to the Plaintiff for an award of actual damages, statutory damages per Defendant, and reasonable attorneys' fees and costs.

## COUNT SIX-VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES ACT, R.C. 1345, *et seq.*

95.	The Plaintiff incorporates all allegations contained in Paragraphs 1 through 42 as if fully restated herein.

96. The Ohio Consumer Sales Practices Act is a state consumer protection law prohibiting unfair and deceptive acts and practices by suppliers before, during, or after a consumer transaction. R.C. 1345.02(A). The Ohio Consumer Sales Practices Act prohibits unconscionable acts or practices in connection with residential mortgages by suppliers before, during, or after a consumer transaction. R.C. 1345.03.

97. Carlo is a consumer, and both the account that gives rise to this alleged debt as well as the attempt to collect this alleged debt are consumer transactions and Defendants Midwest and JTM are suppliers as defined by the OCSPA, R.C. 1345.01.

98. Numerous cases have held that certain violations of the FDCPA constitute violations of the CSPA. See *Becker v. Montgomery, Lynch*, N.D.Ohio No. 1:02CV 874, 2003 U.S. Dist. LEXIS 24992, at *6 (Feb. 26, 2003), *but see also Slorp v. Lerner, Sampson & Rothfuss,* 587 F.App'x 249, 261 (6th Cir.2014).

99. This court has previously found that the failure to comply with the requirements of the FDCPA in a first-contact letter to a consumer is also an unfair or deceptive act which violates the OSCPA. *Becker v. Montgomery, Lynch*, N.D.Ohio No. 1:02CV 874, 2003 U.S. Dist. LEXIS 24992. The *Becker* court also held that because these actions have previously been determined to be unfair and deceptive acts or practices, they are subject to treble damages under R.C. 1345.09(B).

100. JTM's conduct as alleged in the preceding paragraphs is a violation of R.C. 1345.02 and R.C. 1345.03 and is subject to treble damages under R.C. 1345.09(B).

101. Midwest's conduct as alleged in the preceding paragraphs is a violation of R.C. 1345.02 and R.C. 1345.03 and is subject to treble damages under R.C. 1345.09(B).

102.  The Ohio Consumer Sales Practices Act allows for recovery of non-economic damages up to a maximum amount of $5,000 for conduct such as that of JTM and Midwest as alleged in the preceding paragraphs.

103.  Carlo has been injured by the conduct as alleged in the preceding paragraphs because he has expended out of pocket funds for the home inspection, appraisal, septic inspection, etc. of the property, funds which were lost when the sale fell through due to the actions of Midwest and JTM.

104.  Carlo has been injured in that he has had to retain counsel to force Midwest and JTM to comply with the FDCPA and has incurred expenses for postage for the certified mail correspondence to Midwest, lost time at work to deal with Midwest and JTM, and the emotional stress of having the purchase of a home fall through at the last minute due to the conduct of Midwest and JTM.

105.  Carlo has been injured in that the house he was attempting to purchase had been appraised by his lender for $224,000, but he was under contract to purchase it for $200,000. Carlo has lost the immediate equity of $24,000 due to the conduct of Midwest and JTM.

106.  Carlo has suffered non-economic damages, in that, as alleged in the prior paragraphs, Carlo has been acutely aware of this credit report and the management of the information contained in his credit report.  Despite his efforts, the purchase of his home fell through due to the conduct of JTM and Midwest as described above.  These damages have manifested themselves in the form of stress, frustration, concern, and damage to familial and business relationships.

107.  Defendants are liable to the Plaintiff for an award of actual damages, statutory damages per Defendant, and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Christopher Carlo respectfully seeks judgment against the Defendants Midwest Recovery Services, LLC and JTM Capital Management, LLC as follows:

a. For an award of actual damages of at least $25,000.00 and in a total amount to be proven at trial against each Defendant jointly and severally, as applicable, for all allegations contained in Counts One through Six;

b. For an award of statutory damages of $1,000.00 against Defendant Midwest Recovery Services LLC for any/all of the allegations contained in Counts One through Five;

c. For an award of statutory damages of $1,000.00 against Defendant JTM Capital Management LLC for any/all of the allegations contained in Counts One through Five;

d. For an award of statutory damages of $500.00 against Defendant Midwest Recovery Services LLC for any/all of the allegations contained in Count Six;

e. For an award of statutory damages of $500.00 against Defendant JTM Capital Management LLC for any/all of the allegations contained in Count Six;

f. For an award of non-economic damages of $5,000.00 against Defendants jointly and severally for any/all of the allegations contained in Count Six;

g. For an award of treble damages against Defendants jointly and severally for any/all of the allegations contained in Count Six;

h. For an award of Plaintiff's reasonable attorneys fees and costs against Defendants jointly and severally for any/all of the allegations contained in Counts One through Five and additionally for the allegations contained in Count Six; and

i. For any other relief deemed appropriate by this court.

       Respectfully Submitted,

       /s/ Brian D. Flick, Esq.
       Brian D. Flick (0081605)
       Marc E. Dann (0039425)
       DannLaw
       PO Box 6031040
       Cleveland, OH 44103
       216-452-1033 phone
       216-373-0536 fax
       bflick@dannlaw.com
       notices@dannlaw.com
       *Counsel for Plaintiff Christopher Carlo*

## DEMAND FOR JURY TRIAL

Plaintiff, Christopher Carlo, demands a jury trial in this matter.

       /s/ Brian D. Flick
       Brian D. Flick (0081605)
       *Counsel for Plaintiff Christopher Carlo*

## **CERTIFICATE OF SERVICE**

       I hereby certify that a copy of *Plaintiff's First Amended Complaint* was served on the following party via electronic means and ordinary US Mail on this 10 day of July, 2018 as required by Local Rules of this Court:

Michael J. Palumbo, Esquire
Anthony J. Gingo, Esquire
Gingo Palumbo Law Group LLC
Summit One
4700 Rockside Road, Suite 440
Independence, Ohio 44131
michael@gplawllc.com
anthony@gplawllc.com
Counsel for Defendant, JTM Capital Management, LLC

And the following party via certified US Mail and ordinary US Mail on this 10 day of July, 2018:

Midwest Recovery Systems, LLC
℅ Corporation Service Company
50 W. Broad Street, Suite 1330
Columbus, OH 43215

                                                 /s/Brian D. Flick, Esq.
                                                 Brian D. Flick, Esq.
                                                 *Counsel for Plaintiff*